

**FILED**
**Mar 14, 2023**
**02:50 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **Ronnie Slater,** ) | **Docket No.: 2020-01-0512** |
| **Employee,** ) | |
| **v.** ) | |
| **ADECCO USA, Inc.,** ) | **State File No.: 49580-2020** |
| **Employer,** ) | |
| **And** ) | |
| **New Hampshire Insurance Company,** ) | **Judge Thomas Wyatt** |
| **Carrier.** ) | |
| ) | |

## EXPEDITED HEARING ORDER

On March 8, 2023, the Court heard an Expedited Hearing in which Ronnie Slater sought physical therapy and unpaid temporary disability benefits for a left-knee injury. ADECCO USA contended it owed no benefits because Mr. Slater did not prove that his left-knee injury, or need for its treatment, arose primarily out of and in the course and scope of employment. ADECCO also claimed that it owes no temporary disability benefits because Mr. Slater failed to prove disability from his alleged knee injury during the period in which he sought benefits.

For the reasons below, the Court orders ADECCO to provide ongoing medical treatment for Mr. Slater's left-knee injury, including immediate authorization of the physical therapy ordered by the treating physician. The Court denies Mr. Slater's claim for temporary disability benefits for insufficient proof.

### History of Claim

In January 2020, Mr. Slater sustained a compensable spinal injury and had lumbar surgery eight months later. Six weeks after surgery, Mr. Slater's low-back pain had improved, but he continued to have pain in the left leg.

Mr. Slater testified that, after surgery, he experienced numbness and weakness in his left leg that caused him to fall two or three times. Around this time, ADECCO, a

temporary employment agency, assigned him transitional work at a food bank. While working at the food bank on January 26, 2021, his left leg gave way when he stepped over pallets while carrying empty boxes. He went down, and his left foot wedged between two pallets. He then fell backward, twisting his back and left knee.

Mr. Slater reported this injury and saw a doctor at an urgent care clinic that same day. He told the doctor he had back pain and tingling down both legs.

Three weeks later, Mr. Slater saw his spine surgeon, who noted, "At the end of 01/2021 . . . he was reaching and lifting some empty boxes and tripped over a pallet and fell backwards landing on his back." Mr. Slater also reported "more soreness in his lower and upper back" with "some discomfort in his left leg" but no more weakness. The surgeon placed restrictions of no lifting over ten pounds, bending, or twisting.

When he saw the surgeon again in May, Mr. Slater reported left-knee complaints but, according to the medical records, was not working. His "inability to work" contributed to depression. On the next visit, September 9, Mr. Slater had ongoing back symptoms, including tingling in his left leg and weakness in his left foot, as well as "[k]nee pain with patellar crepitus on the left." During this visit, the spinal surgeon placed Mr. Slater at maximum medical improvement for his back, gave an impairment rating for the spinal injury, and referred him for a functional capacity evaluation as well as more treatment for his knee. The surgeon stated that the functional capacity evaluation restrictions would be permanent.

During the functional evaluation on September 29, Mr. Slater reported ongoing "low back pain with symptoms radiating down the left leg, with reported numbness and tingling, occasional weakness[.]" He also reported left-knee pain while standing, walking on a treadmill, stair climbing, and squatting. The examiner determined the evaluation findings were valid and placed Mr. Slater in a light-to-medium category of industrial exertion based on restrictions on his capacity to lift, walk, climb stairs, and bend.

On February 9, 2022, Mr. Slater requested an Expedited Hearing seeking several benefits, including authorization of the knee referral made by the spinal surgeon five months earlier. He supported this request with an affidavit stating that his spine surgeon referred him for treatment of "left knee pain that had developed after one of several falls where my leg goes numb and weak[.]" The affidavit also stated that he could not work "due to the pain from the injury and the surgery[.]" In March 2022, a week before a scheduled Expedited Hearing, ADECCO gave Mr. Slater a panel, from which he selected Dr. Jason Rogers for knee treatment.

At the initial visit on July 12, Dr. Rogers noted, "This is a workers' compensation injury that occurred several months ago when he experienced left lower extremity instability at work which caused him to fall." He ordered x-rays that showed no

osteoarthritis but revealed a tilt of the left patella. Dr. Rogers diagnosed "pain in the left knee," injected cortisone, and made a referral for physical therapy.

Mr. Slater returned to Dr. Rogers on August 30 and October 11. On both occasions, he diagnosed left knee pain and noted that Mr. Slater had not undergone physical therapy. On the latter date, Mr. Slater said nobody ever called to schedule the therapy.

Dr. Rogers's records contain signed Referral Orders for physical therapy dated July 12 and August 30, 2022, and February 17, 2023. The two earlier-dated forms list a third-party administrator for ADECCO's carrier as the primary payment source. The forms list ADECCO as the policy holder and state that "Eligibility" was "Verified."[1] To date, Mr. Slater has not had physical therapy.[2]

In December 2022, Mr. Slater requested this Expedited Hearing. On January 31, 2023, Dr. Rogers signed responses to questions posed by Mr. Slater's counsel. On causation, he was asked to consider the following:

> Mr. Slater reports the knee pain began when he was attempting to step over some pallets in the floor when his left leg went numb and dropped down causing his left foot to become stuck between two pallets on the floor, causing him to fall backwards, twisting and extending his leg and knee. The FCE was performed on 09/29/21 with multiple restrictions recommended. However, it appears that Mr. Slater may not have received any clear instructions or review regarding the recommended restrictions.

The letter posed the following question to Dr. Rogers: "More likely than not, did the work-related accident contribute greater than 50% to result in Mr. Slater's fall and left knee injury?" Dr. Rogers checked "Yes." Dr. Rogers also wrote that Mr. Slater had not reached maximum medical improvement for his knee and should remain "out of work until further knee treatment is completed."[3]

Mr. Slater sought temporary disability benefits from September 29, 2021, until September 20, 2022, when ADECCO resumed payment. Counsel for ADECCO asked Mr. Slater if he would agree with records showing he received temporary disability benefits

---

[1] Since Mr. Slater first saw Dr. Rogers on July 12, **2022**, the Court assumes that the reference to "7/10/**20**" on the referral forms should actually be "7/10/**22**."

[2] Counsel for ADECCO stated she did not know if ADECCO's carrier ever got copies of the Referral Orders. Mr. Slater's counsel pointed out that Dr. Rogers's records include a fax cover sheet showing five pages were received by ADECCO's adjuster Kelly Piturski on July 18, 2022. ADECCO's counsel stated that Ms. Piturski adjusted Mr. Slater's claim earlier but was no longer the adjuster.

[3] Dr. Rogers wrote on August 30, 2021, that Mr. Slater was at maximum medical improvement on his left knee. However, in his October 2021 note, he suggested that he would not then perform an impairment rating because a rating usually occurs after the attainment om maximum medical improvement.

through October 15, 2021, and he stated he would agree.[4]  Mr. Slater offered little testimony about whether he worked during the period for which he sought benefits, other than to say that he is currently on Social Security disability.

ADECCO objected to admission of some medical records and Dr. Rogers's questionnaire because Mr. Slater filed them two weeks before the hearing instead of contemporaneously with his Request for Expedited Hearing.  It claimed this prejudiced its ability to schedule Dr. Rogers's deposition.  Mr. Slater countered that ADECCO gave him copies of Dr. Rogers's records, thus it could not claim surprise by the admission of the records into evidence.  He asserted that ADECCO's receipt of the records before it gave them to him showed that ADECCO had more than sufficient time to schedule Dr. Rogers's deposition.[5]

The Court overruled ADECCO's objection based on Tennessee Compilation Rules and Regulations 0800-02-21-.15(1)(b), which permits the Court to admit documents not timely filed under the rules upon a showing of good cause.  Here, ADECCO gave the records to Mr. Slater; thus, it suffered no surprise or disadvantage by Mr. Slater's reliance on the records at the hearing.  Also, Dr. Rogers did not sign the questionnaire responses until after Mr. Slater filed his Request for Expedited Hearing.  The Court held the above facts constitute good cause for admitting the records over ADECCO's objection.

ADECCO also objected to the admission of the questionnaire responses because they were based on an inaccurate hypothetical description of the mechanism of Mr. Slater's injury and the restrictions placed on his activities.  The Court overrules the objection and holds that the questionnaire sufficiently tracks the facts in the record to justify admitting it. Any discrepancies go to the weight of the evidence.  For those reasons, the Court overruled ADECCO's objection.

### Findings of Fact and Conclusions of Law

In an Expedited Hearing, the employee must prove that he will prevail at a hearing on the merits in showing entitlement to benefits.  Tenn. Code Ann. § 50-6-239(d)(1) (2022).

To recover for his alleged work-related left-knee injury, Mr. Slater must show that the injury "arises primarily out of and in the course and scope of employment, considering all causes."  To show this, he needs testimony of a physician, based on a reasonable degree of medical certainty, that the "employment contributed more than fifty percent (50%) in

---

[4] The Court assumes that ADECCO paid temporary disability benefits through September 29 or October 15 because it did not return him to work after the spinal surgeon placed restrictions after Mr. Slater's fall at the food bank.

[5] Earlier in the hearing, counsel for ADECCO stated that she attempted to schedule Dr. Rogers's deposition even before she knew Mr. Slater would attempt to introduce his records at the hearing.

causing the injury." The employee must also show by medical expert testimony that the work injury "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment [for which the employee seeks benefits,] considering all causes." The Court gives a rebuttable presumption of correctness to the causation opinion of a treating physician selected from a panel provided by the employer. Tenn. Code Ann. § 50-6-102(12)(B)-(E).

Here, the only medical opinion on causation is that of Dr. Rogers, whom Mr. Slater selected from a panel. Dr. Rogers responded "Yes" as to whether the work injury described in the questionnaire "contribute[d] greater than fifty percent to result in Mr. Slater's fall and left-knee injury." ADECCO argued that Dr. Rogers's opinion is unreliable because he based it on hypothetical facts that were not proven during the hearing. The Court disagrees and finds the description of the mechanism of Mr. Slater's knee injury in the questionnaire sufficiently tracks Mr. Slater's testimony, as well as statements in the medical records, to justify Dr. Rogers's reliance on those facts in giving his opinion.

ADECCO also argued that Mr. Slater's left-knee injury is not compensable because the providers who saw him after he fell at the food bank did not specifically record reports of left-knee pain. While that is true, those providers did note Mr. Slater's report of left-leg symptoms, including discomfort. Also, the providers recorded that Mr. Slater reported increased back pain from the fall.

Upon considering all the causation evidence, the Court holds that ADECCO did not rebut the statutory presumption of correctness afforded Dr. Rogers's causation opinion. Further, the Court places importance on the fact that x-rays showed that Mr. Slater had no pre-existing arthritis in his left knee. Thus, this record contains no evidence that Mr. Slater's left-knee pain comes from anything other than his fall at the food bank. On this record, the Court holds that Mr. Slater will likely prevail at trial in showing that his left-knee injury arose primarily out of and in the course and scope of his employment at ADECCO.

For the same reasons, the Court holds that Mr. Slater will likely prevail at trial in showing his entitlement to physical therapy. ADECCO has failed to authorize treatment that Dr. Rogers ordered three times over a period of approximately eight months. If the failure to authorize treatment could be explained by a lack of communication between the physician and the carrier, as ADECCO suggested, it would have produced evidence of that fact, which it did not do.

ADECCO shall promptly authorize and arrange for the physical therapy ordered by Dr. Rogers and inform Mr. Slater of the date of the first visit. ADECCO shall promptly file a notice with the Court Clerk documenting its compliance with this part of the order.

Mr. Slater asked the Court to refer ADECCO for a penalty for failing to authorize his physical therapy. Tennessee Code Annotated section 50-6-118(a)(11) states that the Bureau may collect penalties for "[f]ailure of any employer to timely provide medical treatment made reasonably necessary by the accident and recommended by the authorized treating physician[.]" The Court refers this case to the Bureau's Compliance Program to consider the imposition of a penalty for ADECCO's long delay in providing Mr. Slater physical therapy.[6]

Finally, Mr. Slater additionally claimed temporary disability benefits. The record here does not contain evidence that a physician took Mr. Slater off work for his left knee until Dr. Rogers responded to the causation questionnaire in January 2023. By that time, ADECCO had already reinstated temporary disability benefits. However, the record shows that Mr. Slater's spinal surgeon made permanent the restrictions in the September 29, 2021 functional capacity evaluation. For that reason, Mr. Slater's claim is for temporary partial disability benefits. *See* Tenn. Code Ann. § 50-6-207(1).

To recover temporary partial benefits during a week, Mr. Slater must show that, due to his partial disability, the wages he was able to earn that week were less than his average weekly wage. *Id.* This record contains no evidence on the latter part of the equation. No evidence explains why Mr. Slater was out of work during the period in question; whether he unsuccessfully attempted to return to work under his restrictions; and in which weeks he was paid Social Security benefits. For those reasons, the Court holds that, on this record, Mr. Slater did not show he will likely prevail at trial in proving his entitlement to temporary partial disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. ADECCO shall immediately authorize the physical therapy ordered by Dr. Rogers, arrange the date of the first visit, and notify Mr. Slater of the date and time. Finally, it shall immediately file written notice with the Court Clerk documenting its compliance with this order.

2. This case is set for a Status Hearing on **June 30, 2023 at 10:00 a.m. Eastern Time**. You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. Failure to call in may result in a determination of the issues without your further participation.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from**

---

[6] Mr. Slater also asked for attorney's fees for the delay in physical therapy. Since ADECCO continues to challenge the causation of his knee injury, the Court defers decision on attorney's fees until the causation issue can be fully resolved at a Compensation Hearing.

the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to **WCCompliance.Program@tn.gov** no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED March 14, 2023.**

_Thomas Wyatt_
_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Rule 72 Declaration of Ronnie Slater
2. Compilation of medical records
   - Workforce Corporate Health
   - Dr. L. Shay Richardson
   - Dr. Alex Sielatycki
   - Functional Capacity Evaluation
   - AFC Urgent Care
   - Dr. Steven Musick
3. Records of Dr. Jason Rogers
4. Affidavit of Ronnie Slater
5. Panel for knee treatment

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Second Request for Expedited Hearing
4. First Expedited Hearing Order
5. Second Request for Expedited Hearing
6. Employer's Response to Second Expedited Hearing Request

7. Employee's Brief Supporting Request for Expedited Hearing
8. Notice of Filing of Supplemental Table of Contents with Medical Records

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on March 14, 2023.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Carmen Ware Employee's Attorney | | X | cyware@thewarelawfirm.com |
| Kristen Stevenson Employer's Attorney | | X | kcstevenson@mijs.com |

_____
**Penny Shrum, Court Clerk**
Wc.courtclerk@tn.gov